A. O. CHAMPLIN and OPAL CHAMPLIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Champlin v. Commissioner
Docket No. 6169-73.
United States Tax Court
T.C. Memo 1977-196; 1977 Tax Ct. Memo LEXIS 246; 36 T.C.M. (CCH) 802; T.C.M. (RIA) 770196; June 23, 1977, Filed Elton F. Martin, for the petitioners. Thomas F. Kelly, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent has determined deficiencies in petitioners' Federal income taxes for the taxable years 1969 and 1970 in the amounts of $19,294.83 and $2,315.33, respectively. The issues presented for decision are: (1) Whether petitioner A. O. Champlin was required to report an equal share of the partnership's income for the taxable year of the partnership ending January 31, 1969. (2) Whether petitioner may deduct in 1969, $23,292.63 *249 charged to his capital account by the partnership and later credited back to his account in the same fiscal year. (3) The proper amount of petitioner's distributive share of income for the period February 1, 1969 through June 27, 1969. (4) Whether the termination of petitioner's interest in the partnership was the result of a sale of his partnership interest under section 741, [1] or a liquidation of his partnership interest under sections 736 and 761(d). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners resided in Aptos, California, at the time the petition was filed in this case. They filed their joint Federal income tax returns for 1969 and 1970 on October 16, 1970 and June 18, 1971, respectively, with the appropriate office of the district director of internal revenue. Petitioners used the cash basis method of accounting. Petitioner, A.O. Champlin, (hereinafter referred to as petitioner) is a certified public accountant. On February 1, 1956, petitioner entered into an articles of partnership agreement with Kenneth *250 E. Moak, Ralph A. Rouse, Sam Hunsaker and Marvin E. Pigg. Moak, Hunsaker, and Rouse were all former employees of petitioner. The partnership agreement terminated by its own terms on January 31, 1959, unless terminated sooner by the partners. This agreement specifically incorporated an earlier partnership agreement between the original partners, A. O. Champlin, petitioner and Marvin E. Pigg, dated April 12, 1954. In this earlier agreement, petitioner reserved the priority right to repurchase the furniture, fixtures, appliances, supplies and library for the fixed amount of $2,936.30. This earlier partnership agreement terminated automatically on November 10, 1958, unless it was terminated sooner. Pursuant to an agreement of March 23, 1956, Marvin E. Pigg withdrew from the partnership in return for a specified consideration. Additional amendments to the articles of partnership were adopted providing that upon payment to Mr. Pigg, the assets of the partnership would be "owned by [the remaining partners] in proportion to their actual capital contributed as of the date of said payment." The principal office of the partnership of Champlin, Moak, Hunsaker and Rouse, C.P.A., was *251 in Oklahoma City, Oklahoma. Since 1961, however, petitioner and his wife have resided in California and petitioner primarily handled clients of the partnership located in California. The books, records and bank account of the partnership were kept and maintained in the principal office of the firm. The firm had a taxable year ending January 31. Over the years R. A. Rouse was responsible for the bookkeeping and preparation of information returns of the partnership income. The partnership used the cash basis method of accounting for tax purposes and the accrual method for book purposes. Sometime prior to June 26, 1969, petitioner and the remaining partners in the firm had a serious dispute. On June 26 and 27, 1969, the partners attended 2 days of meetings in California with petitioner to arrange for petitioner's orderly withdrawal from the firm. No permanent agreement, however, was reached. On June 27, 1969, Moak, Hunsaker, and Rouse notified petitioner in writing as follows: "As of the close of business on the 27th day of June, 1969, the partnership now existing between you and the undersigned is hereby dissolved." On June 26, 1969, partners Moak, Hunsaker and Rouse withdrew *252 $5,000 from the partnership bank account in the form of a cashier's check. On June 28, 1969, Hunsaker and Rouse received $3,000 from a client-debtor of the former partnership and deposited this check along with the cashier's check in a new bank account to which petitioner had no access. The balance left in the partnership's old bank account per the books was $31.88. On June 30, 1969, Moak, Hunsaker and Rouse took exclusive possession of the former partnership's office in Oklahoma City and all of the furniture, fixtures, equipment, appliances, supplies, library, files, billings, work in progress, leasehold improvements and all assets of the former partnership. The name on the office door, the building directory and the stationery was changed to "Moak, Hunsaker & Rouse." The clients of the former partnership were informed that petitioner was no longer connected with the firm. By letter dated September 8, 1969, Moak, Hunsaker and Rouse notified petitioner that his capital account had been reduced by $23,292.63. This amount was credited one-third each to Moak, Hunsaker and Rouse's capital accounts. The entry was made in response to petitioner's letter of August 8, 1969 in which *253 petitioner demanded that all the collections and cash which were transferred to a new account by the remaining partners be restored to the old partnership account. The entry reducing petitioner's capital account was calculated to force petitioner to return to Oklahoma City and negotiate petitioner's withdrawal from the partnership; it was not the intent of the remaining partners to let the entry stand. This entry was reversed later in the same fiscal year. The $23,292.63 charge to petitioner's capital account did not affect his distributive share of profits for the fiscal year ending January 31, 1969, nor the distributive share of profits for the period February 1, 1969 through June 27, 1969. This entry did not have any effect on the final settlement figure for petitioner's partnership interest reached by the parties. On or about June 1, 1969, petitioner received from the Oklahoma office a copy of an information return of the partnership income for the fiscal year ending January 31, 1969, and a copy of an extension of the time showing the return was due to be filed on or before July 15, 1969. This return was not filed by the partnership. The unfiled return showed that petitioner's *254 distributive share of partnership income was $22,184.68, and that petitioner had actually withdrawn $20,024.14, for the fiscal year ending January 31, 1969. Petitioner's capital account for tax purposes was a negative figure for both the beginning and the end of the fiscal year. Sometime during October or November, 1969, a partnership information return for Champlin, Moak, Hunsaker and Rouse, for the taxable year ending January 31, 1969, was filed with the district director of internal revenue. On this return, petitioner's distributive share was reported at $28,052.72, one-quarter of the profits. While none of the written articles of partnership provided for the division of profits for the taxable years at issue, petitioner was credited with 25 percent of the partnership income, as reflected by the partnership's books for the fiscal years ending January 31, 1967, January 31, 1968, and January 31, 1969. On December 18, 1969, the continuing partnership of Moak, Hunsaker and Rouse entered into an agreement with petitioner to settle the dispute which arose in June of 1969, and to extinguish the claims existing between the parties. The agreement provided, in pertinent part, as *255 follows: THIS AGREEMENT is made between A.O. Champlin, hereinafter referred to as CHAMPLIN, and the continuing partnership of Moak, Hunsaker & Rouse composed of Kenneth E. Moak, Sam W. Hunsaker and Ralph A. Rouse, hereinafter referred to as PARTNERSHIP. WHEREAS, for several years the parties have engaged in the practice of public accountancy as equal partners in the names of Champlin, Moak, Hunsaker and Rouse and Champlin & Co.; and, said partnership was dissolved June 27, 1969 by Moak, Hunsaker and Rouse by service on CHAMPLIN of written notice of dissolution. NOW, THEREFORE, in consideration of the payments, covenants and agreements hereinafter set forth, the parties mutually agree to settle all disputes, controversies, and claims existing between them and buy peace henceforth, as follows: 1. CHAMPLIN relinquishes, releases and quitclaims any and all interest of whatsoever kind or nature in the partnership of Champlin, Moak, Hunsaker and Rouse and Champlin & Co. together with any claims or rights of action against any of the individuals of said partnership; and CHAMPLIN conveys all his interest in said partnership of whatsoever kind or nature unto PARTNERSHIP. 2. PARTNERSHIP *256 agrees to pay to CHAMPLIN the sum of THIRTY-ONE THOUSAND DOLLARS ($31,000.00) as follows: (a) $3,834.70, the receipt of which is acknowledged; (b) $1,165.30 herewith, the receipt of which is acknowledged; and (c) The sum of $26,000.00 in monthly installments of $1,000.00 each until paid. Each such $1,000.00 installment includes 3 1/2% interest on the unpaid balance, all in accordance with the amortization schedule attached hereto, and marked Exhibit A. 3. PARTNERSHIP hereby disclaims any interest, claim, or demand in and to certain claims for services rendered asserted by CHAMPLIN against the Executrix of the Estate of T. Jack Foster, Deceased. The parties agree that the ownership of any such claim has always been and remains exclusively vested in CHAMPLIN. 4. PARTNERSHIP hereby disclaims any interest in and to certain claims asserted by CHAMPLIN in pending litigation against T. Jack Foster & Sons and related entities and it is agreed between all parties that the ownership of such claims has always been and remains exclusively vested in CHAMPLIN. * * *
8. This Agreement finally and completely releases and extinguishes all claims and controversies between the *257 parties, except as provided in paragraph 9. 9. The federal and state income tax returns, which include the operations of Champlin, Moak, Hunsaker & Rouse for the period February 1, 1969 through June 27, 1969, shall be prepared using the cash basis method of accounting and profits shall be allocated equally between the original partners. The returns shall be submitted to CHAMPLIN for approval before filing. In the event of disapproval by CHAMPLIN, each party hereto shall select a Certified Public Accountant, who each shall agree on a third Certified Public Accountant, and the three accountants shall resolve the difference between the parties. The decision of a majority of the accountants so selected shall be binding on the parties hereto. The cost of such arbitration shall be borne equally by the parties hereto. * * *
Pursuant to paragraph 9 of the December agreement, in August 1970, petitioner received a copy of a proposed partnership return for Moak, Hunsaker and Rouse for the taxable year ending January 31, 1970. This return included as petitioner's distributive share of partnership income for the period February 1, 1969 through June 27, 1969 the amount of $14,414.08. *258 Petitioner rejected the proposed return, and reported $9,000 on his 1970 return for that period. Despite petitioner's objection to the proposed partnership return, Moak, Hunsaker and Rouse proceeded to file this return with the district director. Although paragraph 9 of the December 1969 agreement provided for arbitration in the event of such a dispute, petitioner never requested arbitration for the dispute over petitioner's distributive share of partnership income. The partnership return for the taxable year ending January 31, 1970 includes deductions for bonuses earned by employee K. D. Elswick in the sum of $7,181.68, and employee W. A. Wilson in the sum of $5,419.23. The bonuses were awarded toward the end of the fiscal year and usually paid in December of each year. In calculating petitioner's distributive share of partnership income for the period February 1, 1969 through June 27, 1969, the partnership did not allocate thereto any of the bonus deductions attributable to that period. OPINION The first issue is whether petitioner was required to report $28,052.72, a one-quarter share of the partnership income, on his 1969 return. Petitioner reported $22,184.68 as *259 his distributive share of income, based upon an earlier unfiled copy of the partnership's return. Petitioner's position is that he was not entitled to a full quarter share of the partnership income and that the $22,184.68 reported on the earlier unfiled partnership return represented his actual distributive share. Section 704(a) states generally that a partner's distributive share of income shall be determined by the partnership agreement. Although none of the written articles of partnership provided for the division of profits for the tax years at issue, the record indicates that petitioner was entitled to at least an equal share of the profits from the 4-man partnership. We note at the outset, that the introduction to the December 1969 agreement recited that "for several years the parties have engaged in the practice of public accountancy as equalpartners in the names of Champlin, Moak, Hunsaker and Rouse." [Emphasis added]. Moreover, this same agreement provided that profits for the period February 1, 1969 through June 27, 1969 were to be shared equally among the four *260 partners. The books of the partnership show that for the taxable years ending January 31, 1967, January 31, 1968, and January 31, 1969, petitioner was credited with 25 percent of the partnership income. Finally, we note that as senior partner in the firm, it is unlikely that petitioner would receive less than the remaining partners, his former employees. Petitioner testified that he had an oral arrangement with the remaining partners, under which he was to receive primarily the fees he earned in California, a sum substantially less than 25 percent of the total partnership income. Petitioner, however, presented no more evidence to support his testimony. Moreover, petitioner's testimony was directly contradicted by R. A. Rouse, the partner in charge of preparing the partnership books and income tax returns. Viewing all of the evidence, we conclude that petitioner must include $28,052.72 or 25 percent of the partnership income for the year ending January 31, 1969, in his 1969 return. The second issue for our consideration is whether petitioner is entitled to deduct $23,292.63 charged to his capital account by the partnership during the fiscal year ending January 31, 1970. *261 We can find no basis for such a deduction by petitioner. The charge against petitioner's capital account was a strategy used by the partners in Oklahoma City to force petitioner to negotiate his withdrawal from the partnership. This entry was reversed in January 1970 before the end of the fiscal year. The reversal of the entry effectively made the charge against petitioner's capital account a nullity. There is nothing in the record which would suggest that the rescinded charge against petitioner's account affected the final settlement between the parties. [2] Moreover, adjustments to petitioner's capital account in no way affected petitioner's distributive share of profits for the fiscal year ending January 31, 1969 or for the period February 1, 1969 through June 27, 1969. We therefore hold that petitioner may not deduct this $23,292.63 charge to his capital account. *262 Our next task is to ascertain the proper amount of petitioner's distributive share of income for the period February 1, 1969 through June 27, 1969. Petitioner claims that his distributable share of income for that period was $9,000, while respondent has determined that this income amounted to $14,414.08. [3]
Petitioner first argues that paragraph 9 of the December 1969 agreement, providing for equal distributive shares for the period of February 1, 1969 through June 27, 1969, is void. The reason that this provision is void, petitioner contends, is because "taxpayers who are no longer partners *263 cannot retroactively change the agreement as to distributive shares of income which was in effect when the partnership terminated." We find petitioner's contention to be without merit. First of all, this was not a retroactive change in the partnership agreement; the provision for equal division of profits reflected what had been the consistent partnership practice. Moreover, the partnership did not terminate for tax purposes and the partnership year did not end until January 31, 1970. The provision contained in paragraph 9 of the December 1969 agreement is an agreement allocating income of the partnership during the abbreviated tax year of the partnership attributable to the retiring partner (see section 706(c) and section 1.706-1(c)(2), Income Tax Regs.), and is fully consistent with the method the partnership had consistently used in reporting income for Federal tax purposes. Petitioner agreed to an equal allocation of partnership profits after arm's-length bargaining. He has taken no action to have this contract revised or set aside. Furthermore, paragraph 9 of the December 1969 agreement contains a specific provision allowing for the arbitration *264 of any disputes arising over the allocation of profits for the period ending June 27, 1969. Petitioner never requested arbitration. In view of all these circumstances we must reject petitioner's attempt to void the equal allocation provision contained in the December 1969 agreement. Petitioner argues, however, that even if equal shares of partnership distributive income should be reported for the period February 1, 1969 through June 27, 1969, petitioner's income for this period is overstated. This disagreement over petitioner's distributable share of income for the period February 1, 1969 through June 27, 1969 relates to three disputed items. The first of these is a $3,000 fee which petitioner contends was received by the partnership after June 27, 1969 and was therefore not includable in his share of partnership income. We have found that the fee was received on June 28, 1969. Although Ralph A. Rouse, the partner in charge of keeping the partnership records testified that the $3,000 fee was received on June 26 or 27, this flatly contradicts the stipulation of the parties. A similar disagreement arises with respect to the treatment of $5,000 which was withdrawn late in June *265 1969, and transferred by Moak, Hunsaker, and Rouse to a new bank account to which petitioner had no access. Petitioner apparently contends that the $5,000 had been expended by the partnership during the period February 1, 1969 through June 27, 1969, thereby reducing his distributive share for that period. Mr. Rouse testified that the money was not expended, and was in fact reflected as "cash in bank" in the partnership financial statement of June 28, 1969. Rouse further testified that the transfer had no effect on petitioner's distributive share for the period ending June 27, 1969. After careful consideration of the conflicting testimony of petitioner and Rouse, as well as the circumstances surrounding the two disputed transactions, we find that petitioner's share of the $3,000 fee was not properly includable in his distributive share of partnership income for the period ending June 27, 1969. However, the $5,000 withdrawal did not serve to diminish petitioner's distributable share during this period and was properly includable. The last of these disputed transactions involve the question of whether, as petitioner contends, bonuses paid to employees K. D. Elswick and W. A. *266 Wilson in December, 1969 should be prorated over the full fiscal year of the partnership, including the period February 1, 1969 through June 27, 1969. The agreement relative to the allocation of income contained very specific provisions on this point: The federal and state income tax returns, which include the operations of Champlin, Moak, Hunsaker & Rouse for the period February 1, 1969 through June 27, 1969, shall be prepared using the cash basis method of accounting and profits shall be allocated equally between the original partners. * * * The language specifically states that for the partnership including petitioner for the specific period up until June 27, 1969 the income was to be computed on a cash basis and allocated among the partners. In view of this unmistakably clear language, fully consistent with the manner in which the partnership historically reported its income, petitioner cannot prevail on this issue. The final issue for consideration is whether the termination of petitioner's interest in the partnership was the result of a sale under section 741, [4] as contended by petitioner, or a liquidation of his partnership interest under section 736, [5] as contended *267 by respondent. *268 While there may be little, if any economic difference between a "sale" of a partnership interest to the remaining partners and the "liquidation" of that interest, drastic tax differences can result depending upon the form in which the transaction is cast. [6]Foxman v. Commissioner,41 T.C. 535 (1964), affd. 352 F. 2d 466 (3d Cir. 1965). The statute, therefore, allows a great deal of flexibility in determining the tax consequences to the withdrawing partner and to the remaining partners. This flexibility was designed to allow partners, through arm's-length negotiation, to allocate their tax burdens among themselves. See discussion in Foxman v. Commissioner,supra.
*269 Despite this opportunity, in many instances there will be after the fact disagreement as to what was intended, i.e., a sale or a liquidation. Frequently, too, an agreement for a partner's withdrawal will be drafted without tax consequences in mind at all. However difficult it might be to discern the nature of the transaction in some instances, it is clear in the instant case that a liquidation rather than a sale was effected. At the outset, we note that section 736 applies to transactions between the withdrawing partner and the partnership, while section 741 deals with transactions between the partners as individuals. Income Tax Regs., sections 1.736-1(a), 1.741-1(b). The December 1969 agreement sets forth an arrangement whereby petitioner was to receive payments in liquidation of his interest in the partnership. The agreement does not, in any way, evidence an intention on the part of petitioner to sell his partnership interest to Moak, Hunsaker and Rouse, as individuals. The agreement begins as follows: THIS AGREEMENT is made between A. O. Champlin, *270 hereinafter referred to as CHAMPLIN, and the continuing partnership of Moak, Hunsaker & Rouse composed of Kenneth E. Moak, Sam W. Hunsaker and Ralph A. Rouse, hereinafter referred to as PARTNERSHIP. [Emphasis added]. Throughout the agreement the words "partnership" or "continuing partnership" are used to designate the remaining partners. Moak, Hunsaker and Rouse signed the agreement in their representative rather than their individual capacities. The remaining partners did not obligate themselves personally to pay petitioner, nor did they turn over any nonpartnership assets to him. Contrast Foxman v. Commissioner,supra.
Furthermore, there is nothing in the circumstances surrounding the agreement which would suggest a sale rather than a liquidation took place. We therefore hold that the $31,000 settlement represented payments made in liquidation under section 736. Our final task is to allocate the payments made in liquidation between those made for petitioner's interest in the partnership property under section 736(b) and those made as a distributive share of partnership income or as a guaranteed payment under section 736(a). Petitioner *271 makes the preliminary argument that $9,000 of the $31,000 consideration paid under the December 1969 agreement duplicates distributive income already charged to petitioner for the period February 1, 1969 through June 27, 1969. This contention is clearly contrary to the provisions of the December agreement which provides separately for the two amounts. Moreover, petitioner offers no evidence to support his contention and we must therefore reject it. Petitioner also argues that $3,000 of the $31,000 consideration under the December 1969 agreement represents return of capital rather than sums paid under the agreement. This argument likewise contradicts the explicit provisions of the agreement and must also be rejected, especially in the absence of any additional evidence that would support petitioner's position. The December 1969 agreement did not specifically allocate the payments made in liquidation among petitioner's partnership assets. After careful examination of the record and all of the factors affecting the negotiations between the parties, we have, to the best of our ability, determined that $19,000 of the consideration paid was made for petitioner's interest in the *272 partnership property. The remaining $12,000 should be treated as a guaranteed payment under sections 736(a)(2) and 707(c). Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. As of June 27, 1969, petitioner's entire capital account was just in excess of $27,000. By the time of the December 18, 1969 agreement, $3,834.70 of this amount had been tendered to petitioner. If, as petitioner contends, petitioner's final settlement had been further reduced by the amount charged to his capital account, petitioner's capital account would have had a zero balance. Under petitioner's theory therefore, the entire cash settlement represented a sum paid over and above petitioner's balance in his capital account, a most unlikely circumstance. While petitioner contends that the cash settlement was made for the right to repurchase the fixed assets of the partnership at book value, petitioner has not established the value of this priority right, or in fact that this priority right existed at the time of the December agreement.↩
3. The parties originally disputed the appropriate year for inclusion of the income, respondent contending that 1969 was the appropriate year, petitioner contending that 1970 was the appropriate year. Since respondent now agrees with petitioner, we do not deem this the appropriate occasion to attempt to resolve the ambiguities of sec. 1.736-1(a)(6), Income Tax Regs. or reconcile the apparently conflicting statement concerning the closing of the partnership year for the retiring partner with the specific directives of sec. 706(c)↩ and the regulations thereunder.
4. SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE. In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or losss from the sale or exchange of a capital asset, except as otherwise provided in section 751↩ (relating to unrealized receivables and inventory items which have appreciated substantially in value). 5. Secs. 736 and 707, as they existed during the years in issue, provided: SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST. (a) PAYMENTS CONSIDERED AS DISTRIBUTIVE SHARE OR GUARANTEED PAYMENT.--Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered-- (1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or (2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership. (b) PAYMENTS FOR INTEREST IN PARTNERSHIP.-- (1) GENERAL RULE.--Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a). (2) SPECIAL RULES.--For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for-- (A) unrealized receivables of the partnership (as defined in section 751(c)), or (B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will. [Emphasis added.] SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP. * * *
(c) GUARANTEED PAYMENTS.--To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a)↩ (relating to trade or business expenses).
6. If the transaction is a "sale" under sec. 741, petitioner would have capital gain or loss treatment except to the extent of his sec. 751 assets (unrealized receivables and certain substantially appreciated inventory items). By contrast, liquidation payments under sec. 736, determined without regard to partnership income and not in exchange for the partner's interest in partnership property, are treated as guaranteed payments. Such payments are ordinary income to the partner and deductible by the partnership. Sec. 707(c). To the extent payments are in exchange for the interest of the partner in his partnership property, they are considered distributions of the partnership subject to sec. 731↩.